FILED
United States Court of Appeals
Tenth Circuit

December 23, 2019

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

STONEY RAY MENDENHALL,

Defendant - Appellant.

No. 19-7006

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. NO. 6:18-CR-00045-RAW)**

---

Barry L. Derryberry, Assistant Federal Public Defender (Julia L. O'Connell, Federal Public Defender, and Whitney R. Mauldin, Assistant Federal Public Defender, with him on the brief), Office of the Federal Public Defender, Northern and Eastern Districts of Oklahoma, Tulsa Oklahoma, for Appellant.

Gregory Dean Burris, Assistant United States Attorney (Brian J. Kuester, United States Attorney, and Linda A. Epperley, Assistant United States Attorney, with him on the brief), Office of the United States Attorney, Muskogee, Oklahoma, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **EID**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

This case requires us to consider the appropriate scope of an order of restitution. Relying on controlling Supreme Court precedent, we conclude that Congress has authorized restitution only "for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 413 (1990). In ordering restitution for losses related to, but not arising directly from, defendant's offense of conviction, the district court exceeded the range of restitution authorized by the Mandatory Victims Restitution Act. Accordingly, we reverse.

## I. Background

In 2018, a burglar broke into H&H Pawn Gun & Tool (H&H) and stole a substantial amount of property. An inventory revealed that 62 firearms were among the property stolen. Of the 62 firearms, only 13 to 15 were eventually recovered.[1]

A subsequent investigation by the sheriff's office and the Bureau of Alcohol, Tobacco, Firearms and Explosives led to Stoney Ray Mendenhall. Numerous pieces of evidence suggest Mendenhall committed the burglary. For example, an informant told investigators that Mendenhall had discussed details of

---

[1] The government stated in its brief before this court that only 13 were recovered, citing to the Presentence Investigation Report. *See* Aple. Br. at 3. The PSR, however, lists 14 firearms as having been recovered. Adding to the uncertainty, the government stated in its briefing below that "fifteen of the stolen firearms" had been recovered as of February 12, 2019. R. Vol. I at 16.

how he accomplished the burglary. Indeed, even Mendenhall's mother told investigators she had seen him in possession of two firearms matching the descriptions of stolen firearms and that she believed Mendenhall was somehow involved in the burglary. For his part, Mendenhall does not meaningfully dispute this evidence. *See* Aplt. Br. at 10 (conceding that "the record supports a finding that [Mendenhall] caused property damage and other collateral damage" to H&H).

Notwithstanding this evidence and for reasons not stated in the record, Mendenhall was not charged with burglary. Instead, in a single-count indictment, a grand jury only charged Mendenhall with "knowingly possess[ing], receiv[ing] and conceal[ing] a stolen firearm" in violation of 18 U.S.C. §§ 922(j), 924(a)(2). R. Vol. I at 7. The indictment states this violation occurred with respect to three firearms, each of which is identified by serial number therein. All three of the firearms listed were recovered and returned to H&H.

Mendenhall pleaded guilty to knowingly possessing and concealing the firearms listed on the indictment. In the plea colloquy, he did not go further and accept guilt for the burglary or other related acts.

The PSR calculated the advisory sentencing range by incorporating certain upward adjustments of Mendenhall's base offense level due to the fact that "the offense[] involv[ed] 25-99 firearms" and the fact that Mendenhall "us[ed] or possess[ed] any firearm . . . in connection with another felony offense." R. Vol.

III at 9. The PSR also recommended mandatory restitution to H&H pursuant to 18 U.S.C. § 3663A in the amount of $33,763.23 for "the loss of firearms not recovered, wages for employees to conduct inventory, loss of revenue for closing of business (historical average of Saturdays and Mondays), and cleanup/repairs." *Id.* at 14. Mendenhall did not object to any provision of the PSR at sentencing. The district court sentenced Mendenhall to 34 months' imprisonment followed by three years of supervised release and ordered Mendenhall to pay restitution to H&H in the amount recommended by the PSR.

## II. Analysis

Mendenhall challenges the district court's restitution order as outside the bounds of what is authorized by 18 U.S.C. § 3663A. Generally, "[w]e review the legality of a restitution order de novo, the district court's factual findings for clear error, and the amount of restitution for abuse of discretion." *United States v. Parker*, 553 F.3d 1309, 1323 (10th Cir. 2009). Where the defendant has not properly preserved the issue below, however, we review a restitution order for plain error. *See United States v. James*, 564 F.3d 1237 (10th Cir. 2009).

Mendenhall concedes plain error is the appropriate standard of review because no objections were made to the restitution order or the PSR below. To prevail under this standard, he must show "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or

-4-

public reputation of judicial proceedings." *United States v. Mann*, 786 F.3d 1244, 1248 (10th Cir. 2015).

### A. Was there Plain Error?

Mendenhall contends that the district court plainly erred because the loss underlying the restitution order was not caused by the offense of conviction. Relying on the Supreme Court's decision in *Hughey*, we agree. *See* 495 U.S. at 413.

District courts lack inherent powers to order restitution. *See United States v. West*, 646 F.3d 745, 750 (10th Cir. 2011). Instead, such authority stems from Congress. In 18 U.S.C. § 3663A, Congress authorized courts to grant restitution in certain circumstances. Section 3663A requires district courts to order defendants convicted of certain crimes to "make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). "Victim" is defined, as relevant here, as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). The parties do not dispute that possessing, concealing, and receiving a stolen firearm under 18 U.S.C. §§ 922(j) and 924(a)(2)—Mendenhall's offense of conviction—is generally a qualifying offense under the statute. Where the parties diverge is whether the loss incurred by H&H was a direct and proximate result of the offense for which Mendenhall was indicted and convicted.

-5-

In *Hughey*, the Supreme Court interpreted a similarly structured restitution statute. *See* 495 U.S. 411, 415–16 (1990) (interpreting what is now 18 U.S.C. § 3663). The Court held statutory language authorizing restitution to the victim of "an offense" permitted district courts to order restitution "only for losses caused by the conduct underlying the offense of conviction." *See id.* at 416. *Hughey* abrogated our prior holding in *United States v. Duncan* permitting restitution for losses associated with additional counts of an indictment for which a defendant had not been convicted because they "had a significant connection to the act for which conviction was had." 870 F.2d 1532, 1537 (10th Cir. 1989). As this court has found, *Hughey*'s limitation applies equally to restitution orders under 18 U.S.C. § 3663A, such as the one at issue here. *See West*, 646 F.3d at 751.

This limitation dictates the result here. Mendenhall pleaded guilty and was convicted for possessing, receiving, and concealing stolen firearms under 18 U.S.C. §§ 922(j) and 924(a)(2). Such a conviction requires (1) knowing possession of a stolen firearm, (2) that moved or had been shipped in interstate commerce, and (3) knowing or having reasonable cause to believe it was stolen. 18 U.S.C. §§ 922(j); *see also United States v. Al-Rekabi*, 454 F.3d 1113, 1124 (10th Cir. 2006). None of these elements caused the losses cited as the basis for the restitution order: "the loss of firearms not recovered, wages for employees to

-6-

conduct inventory, loss of revenue for closing of business (historical average of Saturdays and Mondays), and cleanup/repairs." R. Vol. III at 14. The three firearms listed in the indictment were recovered and returned. Accordingly, possessing them did not cause "the loss of firearms not recovered." The remaining losses arise from the burglary of H&H, not from Mendenhall's possession, receipt, or concealment of the stolen firearms.

The Fourth Circuit's decision in *United States v. Davis* is instructive. *See* 714 F.3d 809, 811 (4th Cir. 2013). In *Davis*, the defendant broke into a home and stole a handgun, ammunition, and several pieces of jewelry. Similar to Mendenhall here, the defendant pleaded guilty to only a single count of possessing a stolen firearm. Despite instructions in the PSR noting that restitution was inappropriate under the circumstances in light of *Hughey*, the district court in *Davis* awarded the homeowner $685 in restitution in part to cover damages resulting from the burglary. *See id.* at 812. The Fourth Circuit reversed. Citing *Hughey*, the court explained that although the defendant's "burglary and theft of the firearm represent necessary steps in the accomplishment" of the convicted offense, they were "legally irrelevant for the purpose of restitution." *Id.* at 814. Because the losses to the homeowner were not caused by the offense of conviction, namely the possession of a firearm with knowledge that it was stolen, those losses could not be the subject of restitution. *See id.* The same

result is warranted here. Mendenhall's knowing possession of stolen firearms that were subsequently returned cannot reasonably be said to have caused the damage to H&H or its lost revenue.

The government opposes this conclusion by relying on our decision in *United States v. Burns*, 800 F.3d 1256 (10th Cir. 2015). In *Burns*, we upheld an order of restitution for the value of 47 items of stolen mail where the defendant pleaded guilty to possessing stolen mail. *See id.* at 1259. Our decision upheld the full value of the restitution order despite the fact that the defendant disputed whether he in fact possessed 5 of the 47 items. The government suggests *Burns* warrants upholding the portion of the restitution order that relates to the remaining unrecovered firearms because the evidence here "is sufficient to support the district court's finding that Mendenhall more likely than not took the 59 disputed firearms." Aple. Br. at 17.

This overlooks crucial dissimilarities between *Burns* and the present case. First, in *Burns* the defendant did not argue, and the court did not address, whether the restitution order was valid under *Hughey*. *See* 800 F.3d at 1259–60. Second, unlike *Burns*, where the information[2] was drafted broadly enough to capture the

---

[2] The defendant in *Burns* consented to proceeding under an information as opposed to an indictment. The information stated broadly that the defendant "did knowingly receive and unlawfully have in his possession letters, packages, mail, and articles and things contained therein, which had been taken and stolen from

(continued...)

five disputed pieces of mail, here the indictment narrowly identifies only three firearms by serial number. *See* R. Vol. I at 7. Accordingly, the charged conduct in *Burns* was broad enough to encompass the restitution ordered, whereas here it is not.

The government's reliance on the facts admitted in the PSR is similarly unavailing.[3] Although the district court accepted the PSR, including its facts regarding the burglary of H&H, without objection at sentencing, those facts fail to support the district court's order of restitution. *See United States v. Ward*, 182 F. App'x 779, 802 (10th Cir. 2006) (recognizing that while the district court may rely on uncharged conduct in calculating a defendant's sentence, such uncharged conduct cannot form the basis for an order of restitution); *United States v. Frith*, 461 F.3d 914, 916 (7th Cir. 2006) ("Restitution must be based on the offense of conviction, not relevant conduct.").

We are not unmoved by the apparent injustice our decision creates for those victimized by crime. But at least since the Supreme Court decided *Hughey* almost

---

[2](...continued)
post office boxes at the Rock Springs Post Office, knowing the same to have been unlawfully stolen and taken." Information, *United States v. Burns*, 2:14-cr-00142-ABJ (D. Wyo. July 24, 2014).

[3] Nor do appeals to the "substantive purpose" of the restitution statute at issue or its legislative history fare any better. The Supreme Court heard similar arguments in *Hughey* and rejected them based on the plain language of the statute. *See* 495 U.S. at 420–22.

thirty years ago, prosecutorial decisions to frame indictments with a "view to success at trial rather than to a victim's interest in full compensation" are made with a full understanding of the potential consequences. *See* 495 U.S. at 421. There are tradeoffs in such decisions. Exacting a guilty plea to a lesser number of charged crimes than the possible maximum undoubtedly limits victims' recovery, but it also ensures restitution for those crimes to which the defendant pleads guilty. Moreover, prosecutors are not left without recourse. As 18 U.S.C. § 3663A(a)(3) states, restitution payments to "persons other than the victim of the offense" are permissible so long as they are "agreed to by the parties in a plea agreement."[4]

In sum, based on *Hughey*, the first two prongs of plain error are met.

## B. Were Substantial Rights Affected?

Likewise, the plain error undoubtedly affected the outcome of the proceedings. *See United States v. Burns*, 775 F.3d 1221, 1224 (10th Cir. 2014) ("An error affects substantial rights if there is a reasonable probability that the error affected the outcome of the proceedings."). But for the legal error, Mendenhall would not have been ordered to pay restitution as part of his

---

[4] Victims, too, may have independent recourse through a civil action. *See, e.g.*, *Griffith v. McBride*, 108 P.2d 109 (Okla. 1940) (recognizing tort of conversion).

sentence.  Accordingly, his substantial rights have been affected and the third prong of plain error review has been met.

### C.  *Did the Error Affect the Fairness, Integrity, or Public Reputation of Judicial Proceedings*?

Finally, we come to the fourth prong of plain error review—did the error affect the fairness, integrity, or public reputation of these judicial proceedings? *See Mann*, 786 F.3d at 1250.  This is not an easy question in a case like this one where everyone knows that Mendenhall stole the firearms and pocketed cash from the theft.  As we mentioned, the government can avoid restitution problems in the way it charges criminal conduct or reaches plea agreements.  But as a conceptual matter, we have already determined that where a court orders restitution in an amount that exceeds the loss caused by a defendant's offense in violation of 18 U.S.C. § 3663A, such an order amounts to an illegal sentence.  In other cases we have concluded that improper restitution can thereby affect the fairness, integrity, and public reputation of judicial proceedings.  *See United States v. Gordon*, 480 F.3d 1205, 1212 (10th Cir. 2007) (holding a restitution order in excess of the amount authorized by 18 U.S.C. § 3663A constitutes a miscarriage of justice that meets the requirements of plain error).  Likewise, in other cases we have concluded that unlawful restitution orders meet the requirements of plain error. *See United States v. James*, 564 F.3d 1237, 1243 (10th Cir. 2009); *United States*

*v. Smith*, 156 F.3d 1046, 1057 (10th Cir. 1998); *United States v. Guthrie*, 64 F.3d 1510, 1515 (10th Cir. 1995).  These precedents are applicable here.

In sum, all four prongs of plain error are met.

## III.  Conclusion

For the foregoing reasons, the district court's order is VACATED in so far as it relates to restitution and the case is REMANDED for entry of an order consistent with this opinion.