**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ROBERT TIMOTHY ALLEN,

      Defendant - Appellant.

No. 19-1380

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CR-00169-MSK-GPG-1)**
_____

Submitted on the briefs:[*]

Virginia L. Grady, Federal Public Defender, and Grant R. Smith, Assistant Federal Public Defender, Office of the Federal Public Defender for the District of Colorado, Denver, Colorado, for Appellant.

Jason R. Dunn, United States Attorney, and Karl L. Schock, Assistant United States Attorney, Office of the United States Attorney for the District of Colorado, Denver, Colorado, for Appellee.

_____

Before **BRISCOE**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

**BRISCOE**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

_____

Defendant-Appellant Robert Timothy Allen appeals his conviction for depredation of government property under 18 U.S.C. § 1361, arguing that his conviction violates both the Fifth Amendment's Due Process Clause and separation of powers principles. Mr. Allen also appeals the district court's restitution order of $20,300, asserting that the order includes restitution for uncharged conduct and that the district court also erred in applying the procedural framework of the Mandatory Victim Restitution Act (MVRA) by placing the burden on him to disprove the amount of loss contained in the presentence report and by ordering a restitution amount unsupported by evidence. After the parties completed briefing on this case, the government filed a notice of concession, acknowledging that the restitution order was erroneous and suggesting remand for resentencing on restitution. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm Mr. Allen's conviction, vacate the district court's restitution order, and remand the case to the district court to calculate restitution consistent with this opinion.

**I**

Mr. Allen operated a rock and dirt excavation company for most of his life, and in recent years made his living by prospecting for minerals. In 2013, Mr. Allen began prospecting for minerals on a plot of land located in the northern part of Saguache County, Colorado. This land, known as the Vulcan area, is owned by the United States and is administered by the Bureau of Land Management (BLM).

BLM officials became aware of Mr. Allen's mining efforts in June 2013, and David Lazorchak, a BLM geologist, went to the site that month to investigate. Mr.

2

Lazorchak saw several large pits, apparently recently excavated with a bulldozer (which remained on site). A BLM enforcement officer, Derek Chodorowski, also visited the Vulcan area in June 2013. Officer Chodorowksi estimated that many of the pits were large enough to hold one or more vehicles. Mr. Allen had placed a post at each pit, which held a pill bottle containing a piece of paper with Mr. Allen's name, phone number, the name of the pit, and the statement "In accordance with the 1872 mining law." ROA, Vol. 5 at 34. Officer Chodorowski called Mr. Allen about the pits, asking Mr. Allen if he had obtained a permit from BLM to excavate the pits. Mr. Allen responded that under the Mining Act of 1872, he was not required to get permits for mineral exploration.

Because Mr. Allen's understanding of mining law was incorrect and the Mining Act of 1872 is no longer the only applicable law, the agency sent Mr. Allen a non-compliance order in July 2013. The order advised Mr. Allen that his mining activities did not comply with regulations under 43 C.F.R. § 3809.1 [promulgated under the Federal Land Policy Management Act (FLPMA)] which imposes notice and plan of operation requirements for mining operations on federal land. The order gave Mr. Allen thirty days to submit plans of operation for these sites and advised that if he did not comply, BLM could take further action including criminal prosecution. The order explained that those convicted of violating FLPMA are "subject to a fine of not more than $100,000 . . . or imprisonment not to exceed 12 months, or both, for each offense." Supp. ROA at 9. Mr. Allen did not respond to the BLM order, did not obtain any permits, and continued excavating.

3

In October 2013, Officer Chodorowski visited the Vulcan area and saw Mr. Allen digging. Officer Chodorowski asked Mr. Allen if he had obtained permits from the BLM to excavate, and Mr. Allen explained that this was not required under the 1872 mining law. Mr. Allen said "[w]hen I stake my claim, the land becomes private. It is no longer the government's land." ROA, Vol. 5 at 38.

In November 2013, BLM sent Mr. Allen an Immediate Temporary Suspension Order. Mr. Allen was "ordered to immediately suspend all operations" he was conducting in the Vulcan area. Supp. ROA at 12. The order repeated warnings from earlier BLM orders that Mr. Allen's operations ran afoul of regulations promulgated under FLPMA and advised that his "unauthorized operations may also be in violation of other federal and state laws or regulations." *Id.* Mr. Allen did not submit a plan or otherwise comply with this order, and continued excavating.

In May 2016, Mr. Allen was indicted on one count of willfully injuring or committing a depredation against property of the United States, causing damage in excess of $1,000, in violation of 18 U.S.C. § 1361. The indictment did not charge Mr. Allen for his earlier excavations in the Vulcan area, but only included depredation committed between July 24, 2013 and May 22, 2014. Mr. Allen was not charged with violating FLPMA or any associated regulations. Unlike FLPMA, which the BLM had referenced in its orders to Mr. Allen, § 1361 carries a maximum penalty of 10 years imprisonment and a maximum fine of $250,000. Mr. Allen represented himself at trial with the assistance of standby counsel.

4

Mr. Allen pleaded not guilty and defended his actions as being authorized under the Mining Act of 1872. Mr. Allen argued that his reliance on that law meant that his violation was not willful as required under § 1361. The government introduced evidence that Mr. Allen was on notice that his actions violated the law because of the various BLM letters and orders he had received. A BLM employee testified that the agency had solicited bids to refill the holes Mr. Allen had dug and that the expected cost was approximately $20,000. Fred Schmalz, a government contractor, confirmed that he had submitted a bid for $20,300 to restore the area. During closing arguments, the prosecutor explained that the government had gone easy on Mr. Allen by limiting the indictment to dates which covered only some of the pits Mr. Allen had excavated. The jury returned a guilty verdict.

The district court ordered a presentence report and held a sentencing hearing in September 2019. The district court adopted the PSR in full. The maximum term of imprisonment for Mr. Allen's offense was 10 years, and the advisory guideline range was 10 to 16 months. The district court sentenced Mr. Allen to imprisonment for 13 months followed by 3 years of supervised release. The PSR noted that restitution was required under the MVRA and recommended restitution of $20,300. During the sentencing hearing, Mr. Allen objected to the restitution amount, claiming that another, lower bid had been referenced at trial. The government countered that costs had likely risen since trial and referred to trial testimony to establish costs of $20,300. The district court overruled the objection, noting that the "burden is on the defense when it challenges a fact contained in the presentence report." ROA, Vol. 5 at 345. The court explained that it

5

had no evidence "as to the alternate bid; and I decline to reach back into the trial evidence, because the amounts that were submitted there and the evidence submitted there is not necessarily the same evidence that would be submitted here." *Id.* The court found that the defense had "not carried its burden with regard to the amount of restitution" and ordered restitution of $20,300. *Id*. at 345–46. Mr. Allen timely appealed.

## II

Mr. Allen raises three issues on appeal. Mr. Allen first contends that the government's decision to charge him under § 1361 was a violation of the Due Process Clause and separation of powers principles. Mr. Allen also contends that the district court's restitution order is unlawful because it included restitution for losses stemming from uncharged conduct. Finally, Mr. Allen contends that the district court erred in misapplying the procedural framework of the MVRA. As none of these issues were raised before the district court, Mr. Allen's forfeiture of these objections triggers plain error review. *United States v. Rosales-Miranda*, 755 F.3d 1253, 1257 (10th Cir. 2014). "To establish plain error, [a defendant] 'must show that (1) the district court erred, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Miller*, 978 F.3d 746, 757 (10th Cir. 2020) (quoting *United States v. Munoz*, 812 F.3d 809, 813 (10th Cir. 2016)). "An error is plain if it is clear or obvious at the time of the appeal." *United States v. Cristerna-Gonzalez*, 962 F.3d 1253, 1260 (10th Cir. 2020) (quoting *United States v. Frost*, 684 F.3d 963, 971 (10th Cir. 2012)).

6

## III

Mr. Allen raises two constitutional objections to the government's decision to charge him under 18 U.S.C. § 1361 instead of 43 U.S.C. § 1733 (FLPMA). First, Mr. Allen argues that because the notices he received from the BLM expressly mentioned FLPMA and did not reference § 1361, he was deprived of adequate notice—as required by the Due Process Clause of the Fifth Amendment—that his conduct violated § 1361. Aplt. Br. at 16–21. Second, Mr. Allen argues that by proceeding under § 1361 the prosecution ignored clear congressional intent to criminalize unauthorized mining solely under FLPMA. This charging decision, he contends, is contrary to congressional intent and thereby violates the separation of powers doctrine. *Id.* at 21–24. For the reasons discussed below, neither of these arguments establishes error, let alone plain error.

### a. Due Process

Mr. Allen contends that the government's charging decision deprived him of proper notice under the law and created confusion about "what conduct criminal laws prohibit and the potential punishment that will ensue." Aplt. Br. at 17. The Supreme Court "has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *United States v. Batchelder*, 442 U.S. 114, 123–24 (1979). We have also acknowledged that prosecutors have "broad discretion to determine what charges to bring." *United States v. Thomas*, 884 F.2d 540, 544 (10th Cir. 1989).

Mr. Allen is correct in stating that the Due Process Clause requires that criminal laws have clear prohibitions and penalties, because persons "of common intelligence

7

cannot be required to guess" what conduct the law prohibits and what penalties apply when the law is violated. *Winters v. New York*, 333 U.S. 507, 515 (1948). But overlapping criminal provisions do not create a notice problem under the Due Process Clause if the statutes at issue "clearly define the conduct prohibited and the punishment authorized." *Batchelder*, 442 U.S. at 123. "[A]s a general rule, ignorance of the law or a mistake of law is no defense to criminal prosecution." *United States v. Cox,* 906 F.3d 1170, 1190 (10th Cir. 2018). Mr. Allen offers two distinct rationales in support of his due process claim. First, he argues that ambiguity in the conduct prohibited by § 1361 and FLPMA violates the Due Process Clause. Second, he claims that because the letters and orders BLM sent him explicitly referenced FLPMA, the government should be estopped from prosecuting him under a different criminal statute which carries greater penalties.

Mr. Allen first argues his due process rights were violated when "the government's charging decision in this case leaves a person of common intelligence to speculate as to the applicable penalty for a violation of . . . FLPMA." Aplt. Br. at 18. But Mr. Allen was not charged with violating FLPMA; he was charged with depredation of government property under 18 U.S.C. § 1361. There is no doubt that violations of FLPMA are subject to a criminal penalty of no more than 12 months' incarceration. 43 C.F.R. § 3809.700 (explaining the "criminal penalties [that] apply to violations" of FLPMA); *see also* 43 U.S.C. § 1733(a) ("Any person who knowingly and willfully violates any such regulation which is lawfully issued pursuant to this Act shall be fined

8

no more than $1,000 or imprisoned no more than twelve months, or both.").[1] The penalties for violating § 1361 are also clear. The statute explains that, if damage from depredation "exceeds the sum of $1,000," violators shall be punished "by a fine under this title or imprisonment for not more than ten years."[2] 18 U.S.C. § 1361. Both statutes clearly define the conduct each prohibits and the attendant penalties that will apply. Unauthorized mining operations that violate FLPMA are subject to up to 12 months' imprisonment whereas violations of § 1361 that cause more than $1,000 in damage to government property are subject to up to 10 years' imprisonment. Unauthorized mining operations that damage government property may be prosecuted under either statute. The government's charging decision did nothing to obscure the understanding of the law, or the penalties applicable to the conduct at issue here. Mr. Allen's due process rights were

---

[1] Although FLPMA indicates that violators will be subject to a fine of no greater than $1,000, the associated regulations mention a maximum fine of $100,000. *Compare* 43 U.S.C. § 1733(a) ("Any person who knowingly and willfully violates any such regulation which is lawfully issued pursuant to this Act shall be fined no more than $1,000 or imprisoned no more than twelve months, or both.") *with* 43 C.F.R. § 3809.700 ("If you are convicted, you will be subject to a fine of not more than $100,000 or the alternative fine provided for in the applicable provisions of 18 U.S.C. § 3571, or imprisonment not to exceed 12 months, or both, for each offense."). In any event, the maximum fine amount under FLPMA is not at issue in this appeal.

[2] FLPMA and § 1361 each prohibit different conduct as it relates to unauthorized excavation on federal land. FLPMA (and accompanying regulations promulgated by BLM) create notice and permitting requirements for mining operations on federal land, *see* 43 C.F.R. § 3809.1 et. seq., while § 1361 prohibits damage (of any sort) to federal property. Due process is not violated merely because § 1361 imposes felony penalties while FLPMA violations are only misdemeanors. *United States v. Barrett*, 837 F.2d 933, 933–35 (10th Cir. 1988) (upholding application of a felony statute to conduct, despite a more specific statute making the same conduct a misdemeanor).

not violated when he was prosecuted under § 1361 when that statute makes clear the acts criminalized and the penalty that applies.

Mr. Allen's second argument in support of his due process claim is that his prosecution under § 1361 was barred by estoppel. He asserts estoppel applies here to bar his prosecution under § 1361, with its greater penalties, when all of the notices BLM sent specifically referenced FLPMA violations. Aplt. Rep. Br. at 19–21. "The defense of entrapment by estoppel is implicated where a government official misleads a party as to the legality of certain conduct and the party proceeds to act on the misrepresentation so that criminal prosecution of the party implicates due process concerns under the Fifth and Fourteenth Amendments." *United States v. Meraz-Valeta*, 26 F.3d 992, 996 (10th Cir. 1994), *overruled on other grounds by United States v. Aguirre-Tello*, 353 F.3d 1199 (10th Cir. 2004); *see also United States v. Penn. Indus. Chem. Corp.*, 411 U.S. 655, 670–75 (1973) (holding that defendant should be allowed "to present evidence in support of its claim that it had been affirmatively misled [by government agents] into believing that the [conduct] in question w[as] not a violation of the statute"). We have noted that "courts invoke the doctrine of estoppel against the government with great reluctance." *United States v. Gutierrez-Gonzalez*, 184 F.3d 1160, 1166 (10th Cir. 1999) (quoting *United States v. Browning*, 630 F.2d 694 (10th Cir. 1980)).

Mr. Allen's estoppel argument fails because the government did not affirmatively mislead him about the legality of his unauthorized mining operations. An estoppel defense requires "active misleading by the government agent" and "actual reliance by the defendant." *United States v. Nichols*, 21 F.3d 1016, 1018 (10th Cir. 1994) (quotations

10

omitted). Neither is established in the record before us. As the government notes, "the BLM never promised Allen anything." Aple. Br. at 13. In fact, the BLM told Mr. Allen several times that his conduct was illegal. Although the suspension orders the BLM sent to Mr. Allen referenced FLPMA and its potential penalties, the orders did not give the false impression that FLPMA was the only law Mr. Allen was violating by his conduct. To the contrary, the suspension order BLM sent in November 2013 expressly advised that Mr. Allen's "unauthorized operations may also be in violation of other federal and state laws or regulations." Supp. ROA at 12. An estoppel by entrapment defense is inapplicable here because BLM provided Mr. Allen with ample notice that his conduct was illegal and may violate other federal or state laws. Further, Mr. Allen may not reasonably rely on BLM's references to potential penalties when the penalty provision in 18 U.S.C. § 1361 is clearly stated. *Meraz-Valeta*, 26 F.3d at 996.

### b. Separation of Powers

Mr. Allen also contends that because Congress intended for violations of FLPMA be prosecuted *solely* under that statute, the government's decision to charge him under § 1361 violates the separation of powers doctrine. Aplt. Br. at 21–23. Mr. Allen does not cite any case that would support our reversing his conviction due to separation of powers concerns. It is true that "Article I of the Constitution provides that '[a]ll legislative Powers herein granted shall be vested in a Congress of the United States.'" *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (quoting U.S. Const. art. I. § 1). But we have rejected the argument that a "federal prosecutor's unfettered discretion to file federal charges violates the separation of powers." *United States v. Curtis*, 344 F.3d 1057, 1065

11

(10th Cir. 2003). The prosecutor's ability to select from a range of statutes applicable to the same conduct is a feature, not a fault, of our criminal justice system. *United States v. LaBonte,* 520 U.S. 751, 762 (1997) (describing such discretion as "an integral feature of the criminal justice system"). In support of his separation of powers argument, Mr. Allen claims that the "language, structure, or legislative history" of FLPMA demonstrate that Congress sought to have mining violations punished *only* under that Act. *Batchelder*, 442 U.S. at 118. While it is not clear that this "language, structure, or legislative history" test is the proper basis to establish a separation of powers claim, Mr. Allen has not shown that Congress intended that only FLPMA applies when charges are brought for the unauthorized excavations on federal land.

Mr. Allen bases his separation of powers claim on the use of the word "shall" in the text of FLPMA. Aplt. Br. at 21–23 (quoting 43 U.S.C. § 1733(a) ("Any person who knowingly and willfully violates any such regulation which is lawfully issued pursuant to this Act *shall* be fined . . .) (emphasis added)). Mr. Allen reasons that because Congress has the "sole authority to administer public lands" and the "sole authority to enact criminal law," Congress's use of the word "shall" in FLPMA signals an intent that prosecutors use only that statute when bringing charges for mining violations on federal land. Aplt. Br. at 22. But the word "shall" in the statute is insufficient to support the inference that Congress intended FLPMA to apply exclusively to cases like Mr. Allen's. In the similar context of repeal by implication, we have required "express congressional intent" to limit a prosecutor's discretion when two overlapping statutes apply to the

12

conduct at issue.[3] *Barrett*, 837 F.2d at 934. This express intent requirement is a high bar. Courts will not find repeal by implication just because a later statute is "not entirely harmonious with an earlier one." *Id.* (citing *Watts v. Alaska*, 451 U.S. 259, 266–67 (1981)).

In his reply brief, Mr. Allen argues that the legislative history, language, and structure of FLPMA all suggest that "Congress intended for violations of the FLPMA to be dealt with only under the enforcement provisions outlined in the FLPMA." Aplt. Rep. Br. at 11. But this claim is not borne out in the text or history of FLPMA. It is true that the legislative history of FLPMA demonstrates concern that the Act would outlaw conduct that was previously lawful (even though § 1361 was already on the books when FLPMA was debated). Aplt. Rep. Br at 4–6. And Mr. Allen notes that FLPMA has a more demanding mens rea requirement (knowing and willful) than the "willful" requirement in § 1361. But this evidence falls short of the clear legislative intent required to support a claim of repeal by implication. Here, the "legislative branch wrote the law and set the penalty, the executive branch prosecuted him and he was tried and sentenced by the judicial branch." *Curtis*, 344 F.3d at 1065. Rather than evidencing a separation of powers violation, the enforcement action here displayed the proper function of each branch of government in the exercise and interplay of its respective role.

---

[3] Repeal by implication occurs when two statutes are so incompatible that courts find the later statute to have repealed the first. Courts require clear legislative intent to repeal the earlier statute, supported by a finding of "positive repugnancy between the provisions." *Batchelder*, 442 U.S. at 122 (quoting *United States v. Borden Co.*, 308 U.S. 188, 199 (1939)).

13

# IV

Mr. Allen also raises two issues related to the district court's restitution order. As with his constitutional claims, these issues were not raised below and are also reviewed for plain error.

### a. Restitution Amount – Uncharged Conduct

Mr. Allen argues that the district erred in ordering restitution for harms stemming from uncharged conduct. Aplt. Br. at 25–27. The indictment charged Mr. Allen with conduct beginning July 24, 2013 and lasting through May 22, 2014. The evidence at trial established that Mr. Allen dug fifteen pits in total, but that between eight and twelve of the pits were dug before July 24, 2013. ROA, Vol. 4 at 35 (Officer Chodorowski testifying that he saw "at least over a dozen" pits already dug in June 2013); *id.* at 144–45 (Mr. Lazorchak testifying that he saw eight pits on his first visit to the Vulcan area in June 2013). During closing arguments, the government explained that it had "cut [Mr. Allen] some slack" by "not charging him with every single one of these pits that he dug." *Id.* at 298. The government introduced testimony that BLM solicited bids to repair damage caused by Mr. Allen and re-fill all fifteen holes. Repair work included "re-spreading the piles into pits, compacting, and re-seeding." ROA, Vol. 3 at 12. The testimony explained that the BLM received one credible bid for a total repair cost that was "just over $20,000," and spreading this cost across the fifteen holes came to "$1,300 to reclaim a single pit." ROA, Vol. 5 at 158. The presentence report apparently used the same figure, and suggested restitution of $20,300. ROA, Vol. 3 at 12, 32. The district

court adopted the presentence report without any modification, *id.* at 29, and did not make further findings of fact at the sentencing hearing. ROA, Vol. 4 at 324–50.

Ordinarily, we review "the legality of a restitution order de novo, the district court's factual findings for clear error, and the amount of restitution for abuse of discretion." *United States v. Parker*, 553 F.3d 1309, 1323 (10th Cir. 2009). "Where the defendant has not properly preserved the issue below, however, we review a restitution order for plain error." *United States v. Mendenhall*, 945 F.3d 1264, 1267 (10th Cir. 2019). Mr. Allen argues that the restitution order here was plainly erroneous because it includes costs to repair *all* the pits he dug in the Vulcan area, even though many of the pits were dug before the period charged in the indictment.

District courts do not possess inherent power to order restitution, and instead require express congressional authority to award restitution. *Id.* The MVRA, 18 U.S.C. § 3663(A), authorizes courts to grant restitution in certain circumstances. In *Hughey*, the Supreme Court interpreted a similarly structured restitution statute as permitting district courts to order restitution "only for losses caused by the conduct underlying the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 416 (1990); *United States v. West*, 646 F.3d 745, 751 n.1 (10th Cir. 2011) (extending *Hughey*'s holding to the MVRA). Where a restitution order exceeds the losses caused by the defendant's charged conduct, the restitution order "amounts to an illegal sentence." *United States v. James*, 564 F.3d 1237, 1243 (10th Cir. 2009) (finding plain error where the restitution award "exceed[ed] the loss caused by the defendant's conduct"). And we have held "[t]he imposition of an illegal sentence constitutes plain error." *United States v. Smith*, 156 F.3d 1046, 1057

15

(10th Cir. 1998). In *Alisuretove*, we explained that the requirement that MVRA restitution be limited to the offense of conviction "necessarily includes the temporal limits of the offense as outlined in the indictment" and held that a restitution order cannot compensate for losses stemming from conduct that occurred outside the charged period. *United States v. Alisuretove*, 788 F.3d 1247, 1258 (10th Cir. 2015).

After the parties completed briefing on this case, the government filed a notice of concession, acknowledging that "the restitution order in this case, as calculated by the district court, included losses for uncharged conduct."[4] Notice of Government Concession to Remand on Restitution, Nov. 6, 2020, at 1. We agree. The evidence at trial and the presentence report demonstrated that Mr. Allen conducted several excavations predating the period set forth in the indictment. But the district court's restitution order appears to cover reclamation for all of Mr. Allen's excavations, whether before or during the charged period. Accordingly, the restitution order "amounts to an illegal sentence" that is not authorized by the MVRA and is plainly erroneous. *James*, 564 F.3d at 1243. We vacate the district court's restitution order and remand the case to the district court to determine a lawful restitution amount.

---

[4] The government's concession describes this as a calculation error, but it was in fact a legal error by the district court. Factual objections to restitution orders, such as claims that the district court miscalculated the total amount, are not reviewable for plain error. *United States v. Wright*, 848 F.3d 1274, 1285–86 (10th Cir. 2017) ("By not protesting the loss and restitution amounts in the district court, Wright has waived them on appeal."). A district court commits legal error, however, when it issues a restitution order covering losses tied to criminal acts outside the scope of the indictment. *Alisuretove*, 788 F.3d at 1258. Because the district court committed legal (as opposed to factual) error in including losses stemming from uncharged conduct, this challenge is reviewable under plain error.

16

b.  **Procedural MVRA Objection**

Mr. Allen's final issue on appeal is that the district court failed to follow the procedural requirements of the MVRA regarding burdens of proof and evidentiary support for the restitution amount ordered. Mr. Allen contends that the district court erroneously placed the burden of proving the restitution amount on him, instead of the government, and that the district court erred by ordering restitution "despite the absence of any evidence documenting the BLM's loss." Aplt. Br. at 28. Because Mr. Allen did not raise this issue below, we review for plain error. However, the parties both agree that this issue is now moot as a result of the government's concession that the restitution order included losses related to uncharged conduct and its further suggestion that remand is appropriate. Response to Notice of Government Concession to Remand on Restitution, Nov. 9, 2020; Notice of Government Concession to Remand on Restitution, Nov. 6, 2020. We therefore do not reach these procedural issues.

## V

For the foregoing reasons, we AFFIRM Mr. Allen's criminal conviction, we VACATE the district court's restitution order, and we REMAND the case for proper determination of the restitution amount.

17