**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**May 4, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARK KEVIN DODSON,

    Defendant - Appellant.

No. 21-7046
(D.C. No. 6:20-CR-00063-JFH-1)
(E.D. Okla.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **KELLY**, and **CARSON**, Circuit Judges.
_____

Mark Kevin Dodson appeals a district court's restitution order following his guilty

plea to one count of arson in Indian country.  Exercising jurisdiction under 28 U.S.C.

§ 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Dr. Bonnie Miller owned a home in Okemah, Oklahoma, with her now-deceased husband, Dr. Noel Miller. The home had been in the family for decades, but due to several burglaries, it had been boarded up and was vacant by September 2019.

On September 15, 2019, around 3:00 a.m., someone set a fire in the home's basement, "which didn't burn anything but a post." ROA, Vol. III at 13. On September 16, at 12:28 a.m., a neighbor's surveillance video recorded two men walking toward the home carrying containers for liquid. About four minutes later, an exterior wall of the home erupted in flames. The Okemah Police and Fire Departments arrived at the scene and extinguished the fire, but not before the fire had caused additional damage to the home's interior and extensive damage to the exterior.

Investigators identified Mr. Dodson and Seth Henry Thomas as the men in the neighbor's video. Another security video from a nearby motel showed Mr. Dodson's truck in the motel parking lot on September 16 from 12:08 a.m. until 12:41 a.m. A woman who had been there with Mr. Dodson and Mr. Thomas told investigators that after the three of them arrived at the motel, the men exited the truck and walked toward a hill. She said they ran back to the truck 20 minutes later. She could see a fire burning in the direction from where they had been.

Mr. Dodson and Mr. Thomas were indicted on one count of arson in Indian country, *see* 18 U.S.C. §§ 81, 1151, and 1153(a). The indictment said the fire occurred "[o]n or about September 15, 2019." ROA, Vol. I at 8. In Mr. Dodson's petition to enter

2

a guilty plea, he acknowledged starting the second fire: "In the early morning hours of September 16, 2019, . . . I willfully set fire to a vacant house." *Id.* at 16.

The Presentence Investigation Report ("PSR") said that Dr. Miller's insurance company, MDOW Insurance, declared the home a total loss due to structural damage. MDOW calculated the home's replacement value at $384,158.29. Dr. Miller received $288,000 (the policy limit), and $72,000 (settlement for the home's contents) from MDOW. The PSR recommended that MDOW be awarded those two sums as restitution. It also recommended that Dr. Miller receive $96,158.29 (the amount by which the home was underinsured) in restitution.

Mr. Dodson objected, arguing that (1) MDOW's exposure under its insurance contract was not a proper accounting of losses and there was no inventory of lost personal property, (2) MDOW's payments were for losses arising from multiple events, including the September 15 fire and preceding burglaries, and (3) it was impossible to accurately assess losses caused solely by the September 16 fire.

At the sentencing hearing, the district court considered Mr. Dodson's objections and agreed there was insufficient evidence to connect his actions on September 16 to the loss of the home's contents. Thus, the court denied restitution for MDOW's $72,000 personal-property payment. But it determined that the home's replacement value, $384,158.29, was an accurate measure of loss and that "the damage caused by [Mr. Dodson] was sufficient in and of itself to result in a total loss of the home" on September 16. ROA, Vol. III at 52. The court therefore ordered $288,000 in restitution to MDOW

and $96,158.29 to Dr. Miller.[1]  Finally, the court sentenced Mr. Dodson to 51 months in prison.  The criminal judgment incorporated these determinations but said the "[o]ffense [e]nded" on September 15.  ROA, Vol. I at 30.

## II.  DISCUSSION

On appeal, Mr. Dodson challenges the restitution award on three grounds:  (1) MDOW was not a "victim" under the Mandatory Victims Restitution Act ("MVRA"); (2) the factual issues were so complex that the burden of resolving them outweighed the need for restitution under the MVRA; and (3) the district court awarded restitution based on the September 16 arson fire, but the indictment and judgment of conviction listed the date as September 15.  After we provide a brief overview of the MVRA and identify our standard of review, we turn to these challenges and reject each one.

### A. *The MVRA and Standard of Review*

"The [MVRA] provides, in pertinent part, that when sentencing a defendant convicted of certain designated offenses, the court shall order, in addition to any other penalty authorized by law, that the defendant shall make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate."  *United States v. Benally*, 19 F.4th 1250, 1256 (10th Cir. 2021) (ellipsis and quotations omitted); *see* 18 U.S.C. § 3663A(a)(1).  "[R]estitution [is] mandatory for any offense against property under Title

---

[1] The district court imposed the restitution award jointly and severally against Mr. Dodson and Mr. Thomas.

18 of the United States Code in which an identifiable victim has suffered a physical injury or pecuniary loss." *United States v. Butler*, 694 F.3d 1177, 1183 (10th Cir. 2012) (citing 18 U.S.C. § 3663A(c)(1)).

"We review the legality of a restitution order de novo, the district court's factual findings for clear error, and the amount of restitution for abuse of discretion." *United States v. Anthony*, 22 F.4th 943, 950 (10th Cir. 2022) (quotations omitted). "A district court abuses its discretion if it orders a restitution amount based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (quotations omitted).

### B. *Analysis*

### 1. **MDOW's Status as a Victim**

Mr. Dodson argues that MDOW does not qualify for restitution because it is not a "victim" under the MVRA. We disagree.

The MVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2).[2] An insurance company that pays an insured's claim for a loss is an "identifiable victim" under the MVRA and qualifies for restitution. *United States v.*

---

[2] "Every circuit court to have considered the issue has . . . rejected [the] . . . contention that the term 'person' in the MVRA's definition of 'victim' limits victims to natural persons." *United States v. Zander*, 742 F. App'x 358, 362 (10th Cir. 2018) (citing cases). Even "the government can be a 'victim' under the MVRA." *United States v. Quarrell*, 310 F.3d 664, 677 (10th Cir. 2002). *See* Catharine M. Goodwin, Federal Criminal Restitution § 5:4 (Aug. 2021 update) ("person" in the MVRA includes non-person entities such as governments and corporations). Mr. Dodson has not argued otherwise.

*Burks*, 678 F.3d 1190, 1198 (10th Cir. 2012) (affirming restitution award for insurance company that paid its insured's claim for auto theft).

Mr. Dodson argues MDOW is not a victim because he did not directly and proximately harm MDOW given "[t]he multiple intervening events in the instant case." Aplt. Br. at 16. He contends that MDOW lumped the "multiple burglaries that occurred over [ ] an extended period of time" and the "two non-connected arson events" into a "single loss" that it paid to Dr. Miller. *Id.*

But Mr. Dodson overlooks two key points. First, the district court excluded from restitution all personal property losses from any source. Second, the court ordered restitution based solely on the September 16 fire, which damaged the home's structure and resulted in a total loss. Mr. Dodson admitted setting that fire, and Dr. Miller's homeowner's policy required MDOW to pay for the loss.[3] We therefore reject Mr. Dodson's argument that MDOW is not an MVRA victim.

---

[3] We reject any challenge Mr. Dodson may be making regarding the amount of restitution awarded to MDOW. As we said recently, "the court need not calculate the harms with exact precision." *Anthony*, 22 F.4th at 950 (brackets and quotations omitted). The government need only "prove the amount of loss by a preponderance." *Id.* Here, the district court relied on the home's replacement value. The amount was listed in an inspection report that was referenced in the PSR. The replacement value was admitted without objection during Mr. Dodson's sentencing. Courts have held that the replacement cost of a structure damaged by arson can be a valid measure of restitution under the MVRA. *See United States v. Howard*, 887 F.3d 1072, 1078 (10th Cir. 2018) ("[A] district court may, for different types of property, determine that fair market value, replacement cost, foreclosure price, cost to the victim, repair or restoration costs, or another measure of value is most appropriate."); *United States v. Shugart*, 176 F.3d 1373, 1375 (11th Cir. 1999) (using replacement cost as the restitution value for a burned-down church). Mr. Dodson offers no cogent argument demonstrating that the district court either (1) legally erred in using replacement cost

2. **MVRA's Complexity Exception**

The MVRA authorizes the district court to forego restitution for certain offenses, including property offenses, if "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B). Mr. Dodson invoked the MVRA's complexity exception in district court and the court rejected it. We perceive no abuse of discretion. *See United States v. Zangari*, 677 F.3d 86, 93 (2d Cir. 2012) (noting that the district court may invoke the complexity exception "in the exercise of its sound discretion").

Despite Mr. Dodson's characterization of this case as a "factual quagmire" that "no court could ever sort out," Aplt. Br. at 23, 27, the district court did sort out the facts and ably performed the restitution analysis. It excluded personal property losses caused by events preceding Mr. Dodson's September 16 arson. It limited restitution to the arson's impact on the structure of the home, which was a total loss with a discernable replacement value. The factual issues in this case were not so complex as to "bog down a sentencing proceeding" or "embroil[ ] [a district court] in intricate issues of proof." *United States v. Malone*, 747 F.3d 481, 486, 487 (7th Cir. 2014). The district court's

---

to value Dr. Miller's home, or (2) clearly erred in finding that the cost of rebuilding the home would be $384,158.29.

denial of Mr. Dodson's request to apply the MVRA's complexity exception was not an abuse of discretion.

### 3. Date in the Indictment

Finally, Mr. Dodson argues he cannot be required to pay restitution for the damage caused by the September 16 fire because (1) the indictment listed September 15 as the arson fire's date and (2) the judgment of conviction specified an offense end date of September 15. Because this argument was not raised in the district court, Mr. Dodson must show plain error. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021) (observing that "[i]f the defendant has an opportunity to object and fails to do so, he forfeits the claim of error," and "[i]f the defendant later raises the forfeited claim on appeal, Rule 52(b)'s plain-error standard applies" (quotations omitted)).

Under the plain error standard, (1) "there must be an error"; (2) "the error must be plain"; and (3) "the error must affect substantial rights, which generally means that there must be a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Greer*, 141 S. Ct. at 2096. (quotations omitted). Then, "[i]f those three requirements are met, [we] may grant relief if [we] conclude[ ] that the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings."

8

*Id.* at 2096-97 (quotations omitted).  We conclude there was no error, let alone plain error.[4]

Mr. Dodson's argument stems from the rule that "MVRA restitution [must] be limited to the offense of conviction," which "necessarily includes the temporal limits of the offense as outlined in the indictment."  *United States v. Allen*, 983 F.3d 463, 472 (10th Cir. 2020) (quotations omitted).  Thus, "a restitution order cannot compensate for losses stemming from conduct that occurred outside the charged period."  *Id.* at 472-73.  These general principles do not help Mr. Dodson here.

The indictment charged Mr. Dodson with setting the fire "*[o]n or about September 15.*"  ROA, Vol. I at 8 (emphasis added).  "[W]here the phrase 'on or about' is used in an indictment in connection with a specific date, if the prosecution proves that the offense was committed within a few weeks of the date, the proof will be deemed sufficient to hold the defendant responsible for the charge."  *United States v. Charley*, 189 F.3d 1251, 1272 (10th Cir. 1999) (alterations and quotations omitted); *see also United States v. Ellis*, 868 F.3d 1155, 1179 (10th Cir. 2017) ("When an indictment lists a specific date, the government must produce some evidence which tends to show that the defendant committed the charged offense on a date reasonably near to the specified date alleged in the indictment." (quotations omitted)).

The record shows that Mr. Dodson parked at the motel at 12:08 a.m. on September 16 and that he set fire to the home at 12:32 a.m.  The criminal activity occurred "on or

---

[4] Mr. Dodson's argument is a challenge to the legality of the restitution order, which as noted above, we review for error de novo.  *See Anthony*, 22 F.4th at 950.

9

about September 15." A few minutes into September 16 falls well within the range upheld in *Charley* and *Ellis*.

Also, the record shows the district court confined restitution to Mr. Dodson's September 16 conduct. No restitution in his case derived from the first fire at 3:00 a.m. on September 15. During the sentencing proceedings, both parties focused the court's attention on Mr. Dodson's September 16 conduct. *See, e.g.*, ROA, Vol. II at 25, 29 (Mr. Dodson's objections to the PSR, twice stressing that his plea involved his conduct on September 16); *id.*, Vol. III at 45 (the Government's representation at Mr. Dodson's sentencing hearing that the September 15 fire "is not part of . . . what the government has proved or what [Mr. Dodson and Mr. Thomas] have pled to in this case").

Thus, despite the "September 15" references in the indictment and judgment, the district court's restitution order covered only the losses caused by Mr. Dodson's admitted conduct during the first hour of September 16.

## III. CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

10