**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 12, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

CURTIS A. ANTHONY,

    Defendant - Appellee.

----------------------

THE HUMAN TRAFFICKING
INSTITUTE,

    Amicus Curiae.

No. 21-6015

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:15-CR-00126-C-5)**
_____

K. McKenzie Anderson, Assistant United States Attorney (Robert J. Troester, Acting United States Attorney with her on the briefs), Oklahoma City, Oklahoma, for Plaintiff - Appellant.

Dean Sanderford, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender with him on the brief), Denver, Colorado, for Defendant - Appellee.

Nicholas D. Stellakis and Jason J. Struck, Hunton Andrews Kurth LLP, Boston, Massachusetts, Lindsey N. Roberson and Alyssa C. Wheeler, Human Trafficking Institute, Fairfax, Virginia, Erica N. Peterson and Michael C. Dingman, Hunton Andrews Kurth LLP, Washington, D.C., filed an amicus curiae brief on behalf of Plaintiff - Appellant for the Human Trafficking Institute.

_____

Before **TYMKOVICH**, Chief Judge, **MATHESON**, and **PHILLIPS**, Circuit Judges.

_____

**MATHESON**, Circuit Judge.

_____

Curtis Anthony was convicted of child-sex trafficking and conspiracy to commit child-sex trafficking. He was sentenced to prison and ordered to pay restitution to R.W. and M.M. On appeal, this court recognized that Mr. Anthony's conduct was reprehensible, but we vacated the restitution order as to R.W. because the district court failed to apply but-for causation to determine restitution as required by 18 U.S.C. § 1593. *See United States v. Anthony*, 942 F.3d 955 (10th Cir. 2019) ("*Anthony I*"). In doing so, we rejected the Government's argument that the statute permitted restitution based on a sufficient-causation theory. We remanded to the district court with instructions to recalculate restitution based on actual losses resulting directly from Mr. Anthony's offenses.

On remand, the Government sought restitution under the sufficient-causation theory we had rejected in *Anthony I*. The district court denied the Government's request for Mr. Anthony to pay $1,143,000 in restitution to R.W. It found that the Government's expert report failed to determine which losses compensable by restitution she would not have suffered but for Mr. Anthony's conduct. The Government appeals.

Although the parties agree that R.W. suffered trauma from Mr. Anthony and was thus potentially entitled to restitution from him, under *Anthony I* the Government must show that he was the but-for cause of the loss that a restitution award would

2

compensate. And although this showing should be attainable in many instances and likely could have been made here, the Government failed to make it on remand.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. **BACKGROUND**

### A. *Statutory Framework*

The Trafficking Victims Protection Reauthorization Act (the "TVPRA") requires "the defendant to pay the victim . . . the full amount of the victim's losses." 18 U.S.C. § 1593(b)(1).[1] It defines the "full amount of the victim's losses" in accordance with the Mandatory Restitution for Sexual Exploitation of Children Act's definition. *Id.* § 1593(b)(3). Thus, under the TVPRA, the "full amount of the victim's losses" "includes any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim." *Id.* § 2259(c)(2).[2]

---

[1] Both parties cite the TVPRA as the act that authorizes restitution. The relevant language in 18 U.S.C. § 1593 was enacted in the predecessor statute, the Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464.

[2] Under 18 U.S.C. § 2259(c)(2), the defendant must pay the "full amount of the victim's losses," which

> includes any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim, . . . including—
> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;

B. *Factual Background*

We provided a detailed account of the facts of this case in *Anthony I*, 942 F.3d at 960-63. We provide a summary relevant to this appeal.

In May and June 2014, when R.W. was 14 years old, William Johnson prostituted her and subjected her to extreme physical and psychological abuse. *Anthony I*, 942 F.3d at 960. Law enforcement rescued R.W. and arrested William Johnson. He was convicted in federal court of sex trafficking a minor, sentenced to 30 years of imprisonment, and ordered to pay $900,000 in restitution to R.W. *Id.*[3]

In October 2014, R.W. fell into the hands of Maurice Johnson, another pimp, who also abused her and prostituted her for three weeks. *Id.* During this time, Maurice Johnson directed R.W. to recruit her 15-year-old friend, M.M., to be a prostitute. *Id.*

On October 24, Mr. Anthony called an escort line operated by Tonya Gay Gum, one of Maurice Johnson's accomplices, seeking "company" at his office. *Id.*

---

(E) reasonable attorneys' fees, as well as other costs incurred; and
(F) any other relevant losses incurred by the victim.
The victim is therefore entitled only to restitution for actual, out-of-pocket losses. As a leading restitution treatise explains:

> [T]he loss must be tangible, actual, or "out-of-pocket." It cannot include intangible aspects of harm that are sometimes included in civil damages or Guidelines sentencing, such as intended harm, risk of harm, opportunity costs, or speculative harm. Federal Criminal Restitution § 6:13 (2021).

[3] Amended Judgment, *United States v. Johnson*, No. 14-CR-00341, Dist. Ct. Doc. at 83 (W.D. Okla. Jan. 13, 2016).

Ms. Gum sent R.W. to his office, but R.W. left after he could not locate cash to pay her. *Id.* Shortly afterward, Mr. Anthony found his wallet, called the hotline, and asked for R.W. to return. *Id.* This time, M.M. joined R.W. *Id.* Mr. Anthony paid them to strip naked, touched them, and said "he wanted to finish the date with M.M." *Id.* at 960-61 (quotations omitted). R.W. gave M.M. a condom and waited outside while Mr. Anthony had sex with M.M. *Id.* at 961.

Three days later, law enforcement officers rescued R.W. and M.M. *Id.* During the three weeks under Maurice Johnson's control, R.W. and M.M. generated approximately $40,000 for the prostitution ring. *Id.* at 960. Maurice Johnson was prosecuted in a separate action. *United States v. Johnson*, No. 14-CR-0342-C-1, Dist. Ct. Doc. at 21 (W.D. Okla. Dec. 3, 2014). He pled guilty to child sex trafficking, was sentenced to 20 years of imprisonment and 5 years of supervised release, and ordered to pay $327,013.50 in restitution to R.W. and $308,233.50 in restitution to M.M. *Id.* Dist. Ct. Doc. at 106.

In sum,

- William Johnson abused R.W. for three weeks and was ordered to pay $900,000 in restitution.

- Maurice Johnson abused R.W. for three weeks and was ordered to pay $327,013.50 in restitution.

- Mr. Anthony abused R.W. during one encounter described above for which the Government seeks $1,143,000 in restitution.

C. *Procedural Background*

1. **Initial Restitution Proceedings**

Mr. Anthony was indicted and charged with (1) child-sex trafficking, in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and (c); and (2) conspiracy to commit child-sex trafficking, in violation of 18 U.S.C. § 1594(c). *Id.* at 961. The alleged conspiracy spanned the three-week stretch during which R.W. was with Maurice Johnson. *Id.* The superseding indictment named two other adult customers—Trung Duong and William Baker, both of whom pled guilty—as co-conspirators. *Id.* Ms. Gum was identified as an unindicted co-conspirator after she pled guilty to the original indictment. *Id.*

At trial, R.W., M.M., Maurice Johnson, Ms. Gum, and one of the adult customers testified for the prosecution. *Id.* at 962. The jury found Mr. Anthony guilty on both counts. *Id.* The district court sentenced him to the mandatory minimum of 10 years of imprisonment and 5 years of supervised release. *Id.* at 963.

The Government later sought $530,000 in restitution for R.W. and $510,000 for M.M. *Id.* at 962. In support, it submitted (1) R.W.'s victim impact statement from the earlier William Johnson case; (2) M.M.'s victim impact statement; (3) a declaration from physician assistant Julie Bryant, who discussed the general trauma R.W. suffered when she was trafficked, including by William Johnson; and (4) evidence on (i) the costs of medical examinations, (ii) the $40,000 that M.M. and R.W. generated for the prostitution ring, which the Government characterized as

ill-gotten gains, and (iii) the lost wages over R.W.'s and M.M.'s lifetimes. *Id.* at 962-63, 967; App., Vol. 4 at 43-184.

The district court ordered restitution in part, but it rejected the Government's request for R.W.'s and M.M.'s lost income. *Anthony I*, 942 F.3d at 963. In total, the court ordered Mr. Anthony to pay R.W. $327,013.50 and M.M. $308,233.50. *Id.* He appealed the entire restitution award for R.W.[4]

## 2. *Anthony I*

On appeal, this court vacated the district court's restitution order as to R.W. Recognizing that "[r]estitution may be ordered only for losses actually resulting from the offense of conviction," we held that the TVPRA "limit[s] restitution to losses that the defendant's conduct has directly and proximately caused." *Anthony I*, 942 F.3d at 964, 966. We thus held that a defendant's conduct must be a but-for cause of the victim's losses for a court to order restitution. *Id.* at 966.

We then held that the record did not show but-for causation for R.W.'s restitution award. Ms. Bryant, the Government's expert, had failed to "differentiate the psychological treatment needed to address the harms William [Johnson] caused versus the harms caused by the conduct charged in this case." *Id.* at 967. We also said it was not clear from the Government's evidence whether Mr. "Anthony's harms

---

[4] He also appealed the part of the award to M.M. for losses suffered during the charged conspiracy. *Anthony I*, 942 F.3d at 963.

were sufficient, apart from [William Johnson's] harms, to require a lifetime of psychological treatment." *Id.* at 969.

In addition, we agreed with Mr. Anthony that the district court, in awarding restitution, should not have considered the broad conspiracy that was charged in the indictment because the prosecution proved only a smaller conspiracy at trial. We found, however, that Mr. Anthony had not preserved this argument. *Id.* at 974. Nonetheless, we vacated the entire restitution award as to R.W. because the record did not satisfy the but-for causation standard. We remanded for the parties and the district court to address restitution for R.W. anew. *Id.* at 975.

3. **Proceedings on Remand**

   a. *Dr. Missar's report*

On remand, the Government again sought restitution. It submitted an expert report prepared by Dr. C. David Missar, a clinical psychologist.[5] Dr. Missar reviewed the record, interviewed R.W., and administered several tests to evaluate her. His report recounted R.W.'s history and traumas, including her encounter with Mr. Anthony.

As to restitution, Dr. Missar stated that R.W. "will require specific therapy to address the trauma that she suffered during the abuse she endured from her step-grandfather, Mr. William Johnson, Mr. Maurice Johnson, Ms. Gum, Mr. Duong, Mr.

---

[5] The Government also incorporated by reference its briefing and exhibits from the initial restitution proceeding in its briefing on remand.

Baker, and Mr. Anthony." App., Vol. 4 at 244.[6] He opined that "[e]ach incidence of abuse creates a separate and intense traumatic experience, whether or not the victim experiences prior or subsequent trauma." *Id.* Dr. Missar noted that R.W. "had a history of child sexual abuse," "other early traumatic experiences," "and was sexually trafficked by both Mr. Johnsons." *Id.* at 244-45. But he concluded R.W. "would need identical treatment for Mr. Anthony's offenses . . . even if she had sustained no prior traumas." *Id.* at 245. Dr. Missar thus recommended Mr. Anthony pay $833,000 in restitution for R.W.'s treatment costs. *Id.* at 246.[7]

Dr. Missar also recommended that Mr. Anthony pay restitution for R.W.'s tutoring and lost wages. He stated that R.W.'s "sex trafficking interfered with her ability to continue her education." *Id.* at 246. He also opined that sex trafficking had impaired R.W.'s ability to work to her potential. *Id.* He thus recommended

---

[6] Although Dr. Missar's report is under seal, this quote appears in the district court's opinion. *See United States v. Anthony*, 2020 WL 6468166, at *1 (D. Colo. Nov. 3, 2020). The Government also quotes Dr. Missar's report in its opening brief, *see* Aplt. Br. at 12-14, as does Mr. Anthony, *see* Aplee. Br. at 11-12. In quoting Dr. Missar's report, we draw from quotes already in the public record.

[7] Dr. Missar broke down the treatment costs as follows: (1) $30,000 for intensive individual therapy for two years; (2) $435,000 for ongoing individual therapy for 58 years; (3) $50,000 for group therapy for 10 years; (4) $4,800 for two years of monthly psychiatrist visits; (5) $23,200 for 58 years of biannual psychiatrist visits; and (6) $290,000 for 58 years of medications. App., Vol. 4 at 246.

$310,000 in restitution for tutoring and lost wages,[8] for a total recommendation of $1,143,000. *Id.*

The Government requested the district court to "enter an order of [$1,143,000 in] restitution from Mr. Anthony for child victim R.W. consistent with the expert report of Dr. Missar." *Id.* at 218. It did not request a hearing but said Dr. Missar was available to testify.

On remand, the Government therefore limited its case for restitution to Dr. Missar's report, which focused on Mr. Anthony's abuse of R.W. leading to his child-sex trafficking conviction. Neither the Government nor Dr. Missar attempted to show that R.W. was entitled to restitution based on Mr. Anthony's participation in a conspiracy apart from his encounter with R.W. As we discuss below, the district court analyzed and decided the restitution issue accordingly.

b. *District court decision*

The district court denied the Government's motion for restitution without a hearing. First, it rejected the Government's request for treatment costs based on Dr. Missar's report because the report did not support Dr. Missar's conclusion that R.W. would need identical treatment for Mr. Anthony's offenses even without any prior traumas. App., Vol. 3 at 240-41. Second, it rejected the Government's request for restitution for tutoring and lost wages because Dr. Missar's report did not connect

---

[8] Dr. Missar recommended (1) $10,000 for four years of tutoring and (2) $300,000 for a lifetime of lost wages. App., Vol. 3 at 240.

10

any of those losses to her encounter with Mr. Anthony. *Id.* at 240. Because the Government "failed to 'prove that Anthony's acts justify the requested restitution award,'" the district court held that "no restitution can be awarded." App., Vol. 3 at 241 (quoting *Anthony I*, 942 F.3d at 968-69).

## II. **ANALYSIS**

The Government argues the district court (A) abused its discretion by denying restitution and (B) committed several procedural errors that warrant a remand. Our review is limited to whether the district court erred in awarding no restitution based on the Government's failure to meet its burden under *Anthony I*.

### A. *Denial of Restitution*

1. **Legal Background**

"We review the legality of a restitution order de novo, the district court's factual findings for clear error, and the amount of restitution for abuse of discretion." *United States v. Parker*, 553 F.3d 1309, 1323 (10th Cir. 2009). "A district court abuses its discretion if it orders a restitution amount based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Anthony I*, 942 F.3d at 964 (quotations omitted).

A district court may order restitution "only for losses actually resulting from the offense of conviction." *Id.*;*see United States v. Quarrell*, 310 F.3d 664, 680 (10th Cir. 2002) ("A restitution order must be based on *actual* loss."). The Government must prove those losses by a preponderance of the evidence. *See United States v. Wells*, 873 F.3d 1241, 1265 (10th Cir. 2017); *see also* 18 U.S.C. § 3664(e). It must

also prove the amount of loss by a preponderance. *United States v. Galloway*, 509 F.3d 1246, 1253 (10th Cir. 2007). But "[t]he court need not calculate the harms with 'exact precision.'" *Anthony I*, 942 F.3d at 970 (quoting *United States v. Ferdman*, 779 F.3d 1129, 1133 (10th Cir. 2015)).

To meet its burden, the Government must establish "that the defendant's conduct has directly and proximately caused" the losses for which the Government seeks restitution. *Id.* at 966. To prove direct causation, it must show that, but for the defendant's conduct, the victim would not have suffered those losses. But-for causation "is established whenever a particular outcome would not have happened 'but for' the purported cause." *Bostock v. Clayton Cty*, 140 S. Ct. 1731, 1739 (2020). "In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Id.* "[A] defendant cannot avoid liability just by citing some *other* factor that contributed to" the harm. *Id.*

By contrast, the sufficient-causation test is satisfied "when multiple sufficient causes independently, but concurrently, produce a result." *Burrage v. United States*, 571 U.S. 204, 214 (2014). "To illustrate, if A stabs B, inflicting a fatal wound; while at the same moment X, acting independently, shoots B in the head . . . also inflicting [a fatal] wound; and B dies from the combined effects of the two wounds, A will generally be liable for homicide even though his conduct was not a but-for cause of B's death (since B would have died from X's actions in any event)." *Id.* at 215 (quotations omitted) (alterations in original).

12

As the Supreme Court has said about but-for causation, "[s]ometimes that showing could be made with little difficulty." *Paroline v. United States*, 572 U.S. 434, 450 (2014); *see also Burrage*, 571 U.S. at 217 ("[B]ut-for causation is not nearly the insuperable barrier the Government makes it out to be.").

2. **Application**

a. *Restitution for lifetime treatment costs*

The Government sought $853,000 in restitution to cover R.W.'s treatment costs, including a lifetime of therapy and medication. As in district court, it relies on Dr. Missar's report and argues the report establishes that but for Mr. Anthony's offenses, R.W. would not have suffered these losses. We disagree. The report failed to show how much of the treatment costs should be attributed to Mr. Anthony.

At most, Dr. Missar's report proves that Mr. Anthony's offenses were sufficient causes for some of R.W.'s losses.[9] In recommending restitution for a lifetime of therapy and medication costs, Dr. Missar did not even attempt to disaggregate the harms Mr. Anthony caused from the other harms R.W. suffered. Instead, he opined that R.W. "will require specific therapy to address the trauma that she suffered during the abuse she endured from her step-grandfather, Mr. William Johnson, Mr. Maurice Johnson, Ms. Gum, Mr. Duong, Mr. Baker, and Mr. Anthony." App., Vol. 4 at 244. His opinion that R.W. "would need identical treatment for Mr.

---

[9] We are not convinced that Dr. Missar's recommended restitution would survive scrutiny under a sufficient-cause analysis, but we need not address that question here.

Anthony's offenses . . . even if she had sustained no prior traumas," *id.* at 245, completely sidesteps whether Mr. Anthony was the but-for cause of her need for the full amount of lifetime treatment he recommended.

In relying on Dr. Missar's report, the Government thus repeats the mistake it made in *Anthony I* and fails to "differentiate the harms" caused by Mr. Anthony's offenses "from the harms that [other abusers] had caused" R.W. *Anthony I*, 942 F.3d at 967. Rather than heed *Anthony I*, the Government again relies on its sufficient-causation theory. It points to Dr. Missar's statement that R.W. "would need identical treatment for Mr. Anthony's offenses . . . even if she had sustained no prior traumas" and mistakenly argues it proves but-for causation. App., Vol. 4 at 245, Aplt. Br. at 31. Whether or not this opinion may show, as a matter of sufficient causation, that R.W. would need a lifetime of therapy and medication regardless of whether she had suffered other traumas, it falls short of proving but-for causation. It fails to identify the treatment R.W. would need solely because of Mr. Anthony's offenses. *See Bostock*, 140 S. Ct. at 1739.

The Government tries to salvage its argument by pointing to Dr. Missar's detailed description of the trauma Mr. Anthony inflicted on R.W. Aplt. Br. at 31-32. As we said in *Anthony I*, however, Mr. "Anthony's conduct toward R.W. was reprehensible, but the government still must prove how that conduct warrants compensation for a lifetime of psychological treatment [and medication]." 942 F.3d at 969 n.10. Dr. Missar needed to show that, had R.W. never encountered Mr. Anthony, she would not have needed the requested therapy and medications.

14

Because he failed to do so, we cannot find error in the district court's denial of restitution.[10]

The Government also argues the district court should have fashioned a restitution award based on the evidence it presented during the initial restitution proceedings. It points to physician assistant Bryant's testimony and R.W.'s trial testimony and victim impact statement. Aplt. Br. at 36-39. It argues this evidence, when viewed in conjunction with Dr. Missar's report, is sufficient to prove Mr. Anthony's offenses caused R.W.'s losses. *Id.* at 36. But this argument fails for three reasons.

First, on remand at the district court, the Government did not present arguments for restitution based on the evidence from the initial restitution proceedings and cannot do so now. *See Little v. Budd Co., Inc.*, 955 F.3d 816, 821 (10th Cir. 2020). Second, we held in *Anthony I* that this evidence did not satisfy the Government's burden. *Anthony I*, 942 F.3d at 967-68. Third, and most important, the Government ignored our holding in *Anthony I* and made no effort to explain how physician assistant Bryant's report and R.W.'s testimony and victim impact statement, along with Dr. Missar's report, proved that Mr. Anthony's offenses were the but-for cause of her losses. The district court thus did not err in declining to

---

[10] The Government cites *United States v. Monzel*, 641 F.3d 528 (D.C. Cir. 2011), and *United States v. Dillard*, 891 F.3d 151 (4th Cir. 2018), to argue it was an abuse of discretion to set restitution at zero dollars. Aplt. Br. at 24. But in those cases, it was undisputed that the Government met its burden—those cases are therefore inapposite. *See Monzel*, 651 F.3d at 539-40; *Dillard*, 891 F.3d at 160.

order restitution for treatment costs based on evidence from the initial restitution proceedings.[11]

Finally, the Government argued for the first time at oral argument that Dr. Missar's report recommended treatment that is independent from the treatment R.W. needed for the trauma she suffered from other abusers in her life. We do not consider arguments raised for the first time at oral argument. *See Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998) ("Issues raised for the first time at oral argument are considered waived."). At any rate, this argument is inconsistent with Dr. Missar's report, which fails to identify the treatment costs R.W. would not have accrued but for Mr. Anthony's conduct. It instead lumps together the lifetime of treatment R.W. will have to undertake due to "the abuse she endured from her step-grandfather, Mr. William Johnson, Mr. Maurice Johnson, Ms. Gum, Mr. Duong, Mr. Baker, and Mr. Anthony." App., Vol. 4 at 244. Dr. Missar did not identify, as *Anthony I* requires, the separate therapy and medication needed to address the trauma R.W. suffered from Mr. Anthony. Nor did Dr. Missar propose that Mr. Anthony cover a subset of the treatment costs R.W. needs.

The district court did not err by denying restitution for R.W.'s treatment costs.

---

[11] To support restitution for R.W., the Government attempts to draw upon M.M.'s victim impact statement, the costs of tests and examinations M.M. undertook, and the ill-gotten gains from the conspiracy. Aplt. Br. at 39-41. In his brief, Mr. Anthony states that "[t]he government has not advanced, and has therefore waived, any argument that the district court erred in limiting its analysis to the losses R.W. incurred as a result of her encounter with Mr. Anthony." Aplee. Br. at 13 n.2. We agree. *See Little*, 955 F.3d at 821.

16

b.  *Restitution for tutoring and lost wages*

The Government also failed to meet its burden to award restitution for tutoring and lost wages.  Again, as in district court, it relies on Dr. Missar's report; and again, the report does not even attempt to establish but-for causation.  Rather than disaggregate the education and income losses attributable to Mr. Anthony's offenses, Dr. Missar opined that "the impact that sex trafficking had on [R.W.] has . . . impaired her ability to work to her potential."  App., Vol. 4 at 245.  Dr. Missar did not even try to differentiate between the losses R.W. suffered at the hands of other abusers and the losses caused by Mr. Anthony's offenses.  Instead, he combined all of R.W.'s losses from the sex trafficking incidents.  Dr. Missar even failed to mention Mr. Anthony's name or his offenses of conviction when discussing his recommendation for restitution for R.W.'s tutoring and lost wages.

The Government points to Dr. Missar's methodology,[12] which led to a lower figure than what the Government requested during the initial restitution proceedings.  Aplt. Br. at 34-35.  But that again misses the mark.  Indeed, Dr. Missar's methodology is the problem.  It fails to differentiate between the losses attributable to Mr. Anthony's offenses and the losses attributable to the other individuals who trafficked R.W.  The district court thus did not err in denying the Government's request for restitution for tutoring and lost wages.

---

[12] Dr. Missar calculated lost wages based on Social Security Administration data to approximate the lower earnings R.W. would earn the rest of her life.  Aplt. Br. at 34.

\*    \*    \*    \*

The Government faults the district court for failing to award restitution, asserting that Congress has made restitution mandatory. Although the TVPRA makes restitution mandatory, 18 U.S.C. § 1593(a), "[r]estitution may be ordered only for losses actually resulting from the offense of conviction." *Anthony I*, 942 F.3d at 964. The Government failed to prove that, but for Mr. Anthony's offense, R.W. would not have suffered the losses for which the Government seeks restitution.[13] We therefore affirm the district court.

## B. *Procedural Challenges*

The Government contends the district court made three procedural errors that warrant remand. We disagree.

First, it argues the district court abused its discretion in denying restitution when Mr. Anthony did not present any contrary evidence. Aplt. Br. at 47. But the Government bore the burden of proving that but for Mr. Anthony's offenses, R.W. would not have suffered the losses for which the Government sought restitution. *Galloway*, 509 F.3d at 1253. The Government failed to meet its burden, so Mr. Anthony did not need to present evidence.

---

[13] As Amicus, the Human Trafficking Institute argues, and Mr. Anthony concedes, the Government could have met its burden by presenting an expert who "apportion[s] some amount of loss to a one-time abuser under a but-for causation standard." Aplee. Br. at 28. But Dr. Missar's report did not do that. Instead, the report sought to hold Mr. Anthony accountable for all treatment, tutoring, and lost wages arising from the conduct of all her abusers.

18

Second, the Government argues the district court excluded Dr. Missar's report under the *Daubert* standard. Aplt. Br. 46-47. But it did no such thing. It addressed the substance of Dr. Missar's report and determined it did not show but-for causation. In reaching this conclusion, the court did not exclude the report.

Third, it argues the district court erred when it failed to hold an evidentiary hearing. Aplt. Br. at 47. But the court was not required to hold a hearing. *See* 18 U.S.C. § 3664(d)(4) ("[T]he court *may* require additional documentation or hear testimony." (emphasis added)). We fail to see how the court abused its discretion when the Government did not request a hearing. We therefore fail to see error in its decision not holding a hearing.

## III. CONCLUSION

No one disputes that Mr. Anthony caused trauma to R.W. His "conduct was reprehensible." *Anthony I*, 942 F.3d at 969 n.10. The Government bore the burden of showing a need for treatment, tutoring, and lost wages that was directly attributable to Mr. Anthony. Doing so meant following *Anthony I*, which should not have been onerous. "Sometimes [the but-for causation] showing could be made with little difficulty." *Paroline*, 572 U.S. at 450. And in the restitution context, the Government need not provide an amount with exact precision. *Anthony I*, 942 F.3d at 970. It must recommend restitution rooted in a calculation of actual loss. The Government failed to do so. Because the district court did not err, we affirm.