**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**April 14, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROLANDO CIFUENTES-LOPEZ,

    Defendant - Appellant.

No. 24-6177
(D.C. No. 5:19-CR-00364-G-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **MURPHY**, and **ROSSMAN**, Circuit Judges.
_____

**I. INTRODUCTION**

Rolando Cifuentes-Lopez pleaded guilty to two counts of child sex trafficking

in violation of 18 U.S.C. §§ 2, 1591, and 1594. *See United States v. Cifuentes-Lopez*,

40 F.4th 1215, 1217 (10th Cir. 2022). The victims of his commercial sex crimes are

D.H. and S.H. The district court entered awards of restitution to D.H. and S.H. *See*

18 U.S.C. § 1593. Cifuentes-Lopez appeals, claiming the restitution awards are

improper because the government failed to adduce proof D.H. and S.H. suffered

losses that would not have occurred but for his illegal conduct. *United States v.*

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

*Anthony (Anthony I)*, 942 F.3d 955 (10th Cir. 2019), and *United States v. Anthony (Anthony II)*, 22 F.4th 943 (10th Cir. 2022), compel the conclusion the government failed to present sufficient proof of but-for causation. Thus, exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, this court **reverses** the district court's award of restitution. The matter is **remanded** to the district court for the sole purpose of vacating those portions of the judgment mandating restitution.

## II. BACKGROUND

Officers received a tip N.H.[1] was prostituting her minor daughters, D.H. and S.H. An investigation revealed N.H. was trafficking D.H. and S.H. to multiple men, including Cifuentes-Lopez. In separate indictments, the government charged Cifuentes-Lopez, N.H., and two additional adult males with child sex trafficking offenses. Cifuentes-Lopez pleaded guilty to (1) patronizing D.H., a minor, "for a commercial sex act"; and (2) patronizing S.H., a minor, "for a commercial sex act." The district court sentenced him to a lengthy term of imprisonment, a sentence this court affirmed on direct appeal. *Cifuentes-Lopez*, 40 F.4th at 1217.

The government sought restitution for D.H. and S.H. *See* 18 U.S.C. § 1593 (commonly referred to as the Trafficking Victims Protection Reauthorization Act ("TVPRA")).[2] It argued that because all four defendants "pleaded guilty to child sex

---

[1] This court uses initials to reference N.H. for the sole purpose of shielding the identities of the victims.

[2] The TVPRA "requires the defendant to pay the victim the full amount of the victim's losses. . . . [T]he full amount of the victim's losses includes any costs incurred, or that are reasonably projected to be incurred in the future, by the victim,

trafficking of the same two victims," "their offenses [were] coextensive." R. Vol. I at 34. Thus, according to the government, Cifuentes-Lopez should be held jointly and severally liable for the entire amount of the victims' losses. Although the government asserted it could prove but-for causation, it did not identify losses that would not have occurred but for Cifuentes-Lopez's criminal conduct. Instead, it contended it established but-for causation between the four convicted defendants' collective offenses and the quantity of restitution sought.

The government requested an order of restitution in the amounts of $1,437,900 to D.H.; and $1,579,800 to S.H. These figures originated in the expert reports of clinical psychologist Dr. C. David Missar. Missar conducted psychological evaluations of D.H. and S.H. "to assess [their] trauma" and "calculate the costs of making [them] whole from[] the time that [they were] sex trafficked by [their] mother, [N.H.], as well as by and to several different men including [the three adult male defendants]." R. Vol. II at 31, 50. As to the cumulative impact of the multiple acts of abuse D.H. and S.H. suffered, Missar opined each act of abuse created "a separate and intense traumatic experience" for D.H. and S.H. that was not reduced by their prior or subsequent experiences of trauma. *Id.* at 47, 66. Missar did not opine as to what losses D.H. and S.H. would not have suffered but for Cifuentes-Lopez's conduct. Instead, his assessment of their losses aggregated all of the harms they

---

as a proximate result of the offenses involving the victim." *Anthony II*, 22 F.4th at 946 (quotations, citations, and footnotes omitted).

"suffered during the abuse [they] endured from [their] mother" and the three adult male defendants. *Id.* at 47-48, 66-67.

Cifuentes-Lopez objected to the government's request for restitution. Relying on *Anthony I*, he asserted (1) it was improper to award restitution for harms he did not cause; and (2) the government bore the burden of proving the losses he directly caused, rather than identifying the undistinguished harms imposed on the victims by their many abusers. Cifuentes-Lopez also contested the government's factual assertion he was responsible for the trafficking of the victims on "the supply side of the transaction" and, thus, should be held jointly and severally liable for the entirety of the victims' losses. R. Vol. I at 61. Consistent with the terms of his guilty plea, he maintained his role in the offense was limited to engaging in a single commercial sex act with each victim.

Restitution proceedings were abated pending this court's resolution of *Anthony II*. After *Anthony II* was issued, the government filed an amended restitution motion. Its primary argument remained that Cifuentes-Lopez should be held jointly and severally liable for the total losses suffered by S.H. and D.H. Alternatively, it asked the district court to apportion total losses among the four defendants based on calculations by forensic accountant Edith Wong. Missar's reports, which estimated D.H.'s and S.H.'s total losses resulting from all four sex trafficking convictions, remained central to this aspect of the government's restitution request. That is, Wong used Missar's calculations as her starting point and accepted as accurate his opinion of the nature of the victims' losses. Applying accounting principles, however, Wong

adjusted the calculations to account for inflation, mortality, and the time value of money. She also attributed 23% of D.H.'s total losses and 39% of S.H.'s total losses to pre-trafficking trauma. Wong then allocated the remaining totals of "restitution attributable to trafficking for lost earnings, treatment costs, and educational expenses between the Defendants based upon the individual's sentence length as a percentage of the sum of the sentence lengths for all Defendants." R. Vol. II at 112, 140; *see also* *id.* at 109, 124, 137, 153. Wong theorized this method of allocation would determine "the relative severity of each Defendant's actions." *Id.* at 112, 140. Because Cifuentes-Lopez's 298-month sentence represented 26% of the total 1124 months of imprisonment to be served as a result of the sex trafficking convictions involving D.H. and S.H., Wong allocated 26% of the post-trafficking losses to him.

Cifuentes-Lopez objected to the amended restitution request, again asserting the government failed to establish D.H. and S.H. "would not have suffered" the claimed losses but for his offenses. He reiterated his objections to the government's request that he be held jointly and severally liable for the total amount of D.H.'s and S.H.'s losses. He also challenged the government's alternate position that the total amount of the victims' losses should be apportioned according to Wong's model, on the ground her analysis "fails to apportion restitution under a 'but-for causation standard.'" R. Vol. I at 177. He emphasized "Wong did not conduct her own assessment of the harms inflicted upon [the victims] and of their need for restitution." *Id.* Instead, Wong relied on Missar's reports, reports that did not identify any harms he directly caused. Cifuentes-Lopez also claimed Wong's "apportionment regime"

5

(i.e., dividing the total amount of loss among the four defendants based on relative sentence length) was based on a flawed premise. He argued that, contrary to Wong's assumptions, federal sentence lengths are not based solely on various defendants' relative culpability.

The district court held a restitution hearing and heard testimony from Wong. Wong testified she could not "link" the requested restitution amounts with Cifuentes-Lopez's "direct actions." R. Vol. III at 38. She would not speculate as to how the victims' losses would change "if they had never encountered" Cifuentes-Lopez, asserting the subject was "outside of the area of [her] expertise." *Id.* at 38-39. As Wong explained, her restitution opinion was "based on [Missar's] report, which he conducted based on [the victims'] experiences as a result of all of the defendants' actions." *Id.* at 39. Wong could not "say how [Missar's] numbers might change if there was one less defendant." *Id.* She also conceded her reports did not account for any losses caused by other, uncharged men who had engaged in commercial sex acts with D.H. and S.H.

The district court granted the government's motion for restitution. It first rejected the government's request to hold Cifuentes-Lopez jointly and severally liable for the full amount of the victims' losses. It found Cifuentes-Lopez "had not been shown to organize the sex trafficking or to help plan the commercial sex operation being run by [N.H.]," nor had he "sent men to the victims' residence for the purpose of [those men] having sex with the victims." R. Vol. I at 375. The district court accepted the government's calculation of the victims' losses. Specifically, it

6

found the loss amounts calculated by Wong's reports adequately established causation, were supported by a preponderance of the evidence, and were recoverable as restitution under the TVPRA. It declined, however, to adopt Wong's apportionment methodology. Instead, it fashioned its own apportionment scheme, "tak[ing] into account [Cifuentes-Lopez's] 'level of contribution to the victims' loss' and 'economic circumstances.'" *Id.* at 379 (quoting 18 U.S.C. § 3664(h)). It attributed 35% of D.H.'s losses and 20% of S.H.'s losses to Cifuentes-Lopez. It concluded Cifuentes-Lopez "both directly and proximately caused the loss amounts assigned to him" and "but for [his] actions [the victims] would not have suffered those specific losses." *Id.* at 380-81 The district court ordered that Cifuentes-Lopez pay D.H. restitution in the amount of $436,120.30 and S.H. restitution in the amount of $213,016.60.

### III. ANALYSIS

**A. Legal Standard and Standard of Review**

"A district court may order restitution 'only for losses actually resulting from the offense of conviction.'" *Anthony II*, 22 F.4th at 950 (quoting *Anthony I*, 942 F.3d at 964). The government must establish any such actual losses by a preponderance of the evidence. *Id.* "It must also prove the amount of loss by a preponderance. But [it] need not calculate the harms with exact precision." *Id.* (citation and quotations omitted). To satisfy its burden, the government must show the defendant's conduct "'directly and proximately caused' the losses for which the [g]overnment seeks

restitution." *Id.* (quoting *Anthony I*, 942 F.3d at 966). Direct causation means but-for

causation:

> To prove direct causation, [the government] must show that, but for the defendant's conduct, the victim would not have suffered those losses. But-for causation is established whenever a particular outcome would not have happened but for the purported cause. In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause.

*Id.* (quotations and citation omitted). In the context of a child sex trafficking case in

which the government seeks restitution for losses sustained by a victim who has been

abused by multiple perpetrators, the government must "differentiate the harms"

caused by the defendant from the harms caused by other abusers. *Id.* at 951 (quoting

*Anthony I*, 942 F.3d at 967). To do so requires proof that, "had [the child victim]

never encountered [the defendant], she would not have" suffered the losses in

question. *Id.*[3]

---

[3] We recognize some members of this court have expressed doubt as to the propriety of this standard in cases involving victims that have suffered losses "caused by sexual assaults by numerous perpetrators." *See United States v. Anthony (Anthony III)*, 39 F.4th 1247, 1248 (10th Cir. 2022) (Hartz & Eid, JJ., dissenting from the denial of rehearing en banc). Those judges doubt the government can satisfy such a rigorous standard. *Id.* at 1249. Instead, they would adopt the causation standard set out in *Paroline v. United States*, 572 U.S. 434 (2014). *See Anthony III*, 39 F.4th at 1248. *Paroline* recognized injuries to victims of child pornography viewed by multiple offenders are indivisible and held that, in such situations, district courts "could order restitution in essentially the same manner as juries commonly apportion damages for indivisible injuries in civil cases." *Anthony III*, 39 F.4th at 1248. Nevertheless, this panel is "bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam). Thus, this panel must view Cifuentes-Lopez's appeal through the exacting lens established by *Anthony I* and *Anthony II*.

This court "review[s] the legality of a restitution order de novo, the district court's factual findings for clear error, and the amount of restitution for abuse of discretion." *Id.* at 950 (quotation omitted). "A district court abuses its discretion if it orders a restitution amount based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.*

## B. Discussion

Cifuentes-Lopez claims *Anthony I* and *Anthony II* mandate reversal. He notes those cases clearly provide that when a sex trafficking victim is victimized by multiple, independent perpetrators, the government can only demonstrate but-for causation by "isolat[ing] the harm from [the defendant's] offenses." *Anthony I*, 942 F.3d at 969. If the government fails to present such evidence of but-for causation, i.e., evidence of the losses that would not have occurred but for the defendant's offenses, an award of restitution is improper. *Anthony II*, 22 F.4th at 954. Furthermore, Cifuentes-Lopez notes, the only evidence the government presented to the district court was based on aggregate losses to D.H. and S.H. resulting from being sex trafficked by multiple perpetrators. We are compelled to agree that the record is devoid of evidence demonstrating losses to D.H. and S.H. that would not have occurred but for Cifuentes-Lopez's criminal conduct. Thus, the district court erred in entering awards of restitution in favor of D.H. and S.H.

The government's arguments in opposition are not persuasive. The government asserts throughout its response brief that because all four adult defendants engaged in a common enterprise to sexually traffic the victims, Cifuentes-Lopez is legally

responsible for the entirety of the victims' losses.[4] The problem for the government is that the district court rejected this argument based on its own findings of fact. Specifically, the district court found "[t]he case records . . . do not reflect that [the four defendants] were working together so much as they were each acting in their own self-interest, in ways that inflicted similar harms upon the victims." R. Vol. I at 375. It further found the government failed to show Cifuentes-Lopez "organize[d] the sex trafficking or [helped] plan the commercial sex operation being run by [N.H.]." *Id.* Finally, the district court found Cifuentes-Lopez did not send "men to the victims' residence for the purpose of having sex with the victims." *Id.* The government does not acknowledge these factual findings, let alone argue they are clearly erroneous. *See Anthony II*, 22 F.4th at 950 (holding that the district court's factual findings in the TVPRA restitution context are subject to clear-error review). Thus, the government has waived the issue and the district court's findings foreclose this argument.[5]

---

[4] *See* Appellee Response Br. at 17 (asserting Cifuentes-Lopez was "a key player in the story of this case," whose "conduct in perpetuating the sex trafficking of these victims is part of the larger causal set leading to their trauma from sex trafficking"); *id.* at 25 (claiming Cifuentes-Lopez "created and perpetuated the circumstances leading to the victims becoming involved in sex trafficking by preying on their family's poverty"); *id.* (contending Cifuentes-Lopez's "offense conduct [was] not limited to the sex acts he performed with each victim"); *id.* at 26-27 (arguing Cifuentes-Lopez "play[ed] an integral role in the causal set of this case," "exerted influence over this family by threatening them with homelessness," and "a fact-finder could conclude he was a but-for cause of the eventual trauma these girls would suffer from sex trafficking").

[5] By necessity, this also dooms the government's reliance on *United States v. Coulter*, 133 F.4th 1083 (10th Cir. 2025). In *Coulter*, the victims were trafficked by

Alternatively, the government asserts the reports Missar issued here are meaningfully distinct from the Missar report at issue in *Anthony II*. It notes Missar opined in reports submitted here that "[e]ach incidence of abuse creates a separate and intense traumatic experience, whether or not the victim experiences prior or subsequent trauma." R. Vol. II at 47, 66. And, the government notes, Missar's reports in this case do not contain the troubling assertion from *Anthony II* that the victim "would need identical treatment for [Anthony's] offenses . . . even if she had sustained no prior traumas." *See* 22 F.4th at 951.

The government has not meaningfully distinguished Missar's reports in this case from the Missar report found wanting in *Anthony II*. The problem with the Missar report in *Anthony II* was that "[i]t fail[ed] to identify the treatment [the victim] would need solely because of [the defendant's] offenses." *Id.* Instead, the report "lump[ed] together" the treatment the victim would have to undergo "due to the abuse [the victim] endured" from multiple sex traffickers. *Id.* at 952 (quotation omitted). Similarly, the Missar reports here state the victims "will require specific

---

two *co-conspirators*, leaving the question of "who" was the but-for cause of the victims' injuries established. *Id.* at 1091 ("Here, there is no confusion as to *who* were the but-for causes of Doe 1 and Doe 2's sexual-trafficking related traumas because such harms could have only been caused by Coulter and his co-conspirator, Andrade, as established at trial."). Furthermore, rich evidentiary bases established that the losses for which restitution was sought in *Coulter* were imposed by the sexual trafficking, rather than "other traumas in [the victims'] past." *Id.* at 1091-92. This evidence specifically included that "the victims' losses predating Coulter's offense actions are not of the same nature as (*i.e., similar to*) Coulter's offense conduct— neither were sexually trafficked nor similarly traumatized around the same time period." *Id.* at 1091.

therapy to address the trauma [each] suffered during the abuse [they] endured from [their] mother, Rolando Cifuentes, Eri 'Victor' Cifuentes, and Wilson Gramajo." R. Vol. II at 47, 66. Likewise, as to future earnings, the instant Missar reports rely on the undifferentiated "impact that sex trafficking had on [the victims'] . . . ability to work to [their] potential." *Id.* at 47-48, 67. Then, given that "lump[ed] together" need for treatment and restitution for lost earnings, *Anthony II*, 22 F.4th at 952, the Missar reports propose a lump sum to compensate for all identified losses. *Id.* at 48, 67.[6] For those reasons cataloged at length in *Anthony II*, the Missar reports fail to support a finding of but-for causation because they fail to "prove that, but for [Cifuentes-Lopez's] offense[s], [the victims] would not have suffered the losses for which the [g]overnment seeks restitution." 22 F.4th at 953.[7]

---

[6] The government's contrary assertion—that "[w]hile the restitution recommended by [Missar] is an aggregated award, the award is the additive total of each defendant's contribution to the loss," Appellee Response Br. at 34—is mystifying. This court has pored over each of the reports and can find nothing therein to support the notion that the restitution totals are sub silentio conglomerations of the losses imposed on D.H. and S.H. *by the individual defendants*. Instead, Missar's reports make clear the amount of restitution flows from disaggregated totals of the losses suffered by the victims at the hands of all undifferentiated defendants. Missar's statements in each report, R. Vol. II at 47, 66, that "[e]ach incidence of abuse creates a separate and intense traumatic experience, whether or not the victim experiences prior or subsequent trauma," does not change the calculus. The Missar report at issue in *Anthony II* contained that exact statement. 22 F.4th at 949. *Anthony II* nevertheless concluded it was doubtful the report even established sufficient cause, but declined to address the issue because there was no doubt it failed to establish the required, and more rigorous, standard of but-for cause. *Id.* at 951-53 & n.9.

[7] Wong's separate report does not alter this conclusion. As emphasized by Cifuentes-Lopez, Wong specifically disclaimed any knowledge as to the issue of but-for causation, testifying she could "not link" the requested restitution amounts with Cifuentes-Lopez's "direct actions" and would not speculate as to the issue because

Finally, the government argues this case is unlike *Anthony II* because the district court here disaggregated the losses imposed on D.H. and S.H by Cifuentes-Lopez from the losses imposed on the victims by the other individual defendants. This argument puts the cart before the horse. Before a district court can exercise its discretion to apportion restitution amongst defendants that contributed to a loss, *see* 18 U.S.C. § 3664(h), *Anthony I* and *Anthony II* require evidence sufficient to prove a particular defendant directly caused *a* loss to the victim. That is, the government must present evidence "to prove that, but for [a defendant's] offense, [the victim] would not have suffered the losses for which the [g]overnment seeks restitution." *Anthony II*, 22 F.4th at 953. Once the government does so, the district court can use the equitable principles set out in § 3664(h) to apportion all or part of the victim's undifferentiated damages to any or all culpable defendants that likewise directly

---

the subject was "outside of the area of [her] expertise." R. Vol. III at 38-39. Wong's opinion was "based on [Missar's] report, which he conducted based on [the victims'] experiences as a result of all of the defendants' actions." *Id.* at 39. Wong could not "say how [Missar's] numbers might change if there was one less defendant." *Id.* She also conceded her reports did not account for any losses caused by other, uncharged men who had engaged in commercial sex acts with D.H. and S.H. *Id.* at 40; *see also id.* at 11 (noting D.H. "reported she typically had 3-4 customers a day"); *id.* at 31 (Missar's report recognizing D.H. was trafficked to "several different men" in addition to Cifuentes-Lopez and the two other adult male defendants); *id.* at 50 (Missar's report recognizing the same as to S.H.). *But cf. Coulter*, 133 F.4th at 1091 (noting evidence in Missar's report in that case that offense actions of the defendants were not similar to any other kind of trauma the victims suffered prior to the defendants' acts). Given that the government's evidence did not establish Cifuentes-Lopez was a but-for cause of D.H.'s and S.H.'s trafficking losses vis-à-vis the other three convicted defendants, this court need not further consider the government's failure to adduce such evidence vis-à-vis uncharged offenders.

13

caused some part of the victim's losses. That is to say, the equitable discretion to apportion damages set out in § 3664(h) is not coterminous with the requirement for but-for causation set out in *Anthony I* and *Anthony II*.

As was true of the defendant in *Anthony I* and *Anthony II*, the conduct of Cifuentes-Lopez toward D.H. and S.H. is truly reprehensible. 22 F.4th at 951. That fact, however, does not free the government from its burden of proving but-for causation to support an award of restitution, nor allow this court to disregard binding precedent. Because the government failed to prove that had D.H. and S.H. never encountered Cifuentes-Lopez their relevant losses would have been diminished, the district court erred in entering awards of restitution in favor of D.H. and S.H.

Should this court conclude the district court erred in entering awards of restitution in favor of S.H. and D.H., the government requests that we remand the matter for de novo resentencing. We deny the government's request. "Although remand for resentencing generally allows the district court to conduct de novo review, this court may exercise its discretion to limit remand to the existing record under certain circumstances." *United States v. Montano*, 109 F.4th 1275, 1286 n.21 (10th Cir. 2024); *see also United States v. Forsythe*, 437 F.3d 960, 963 (10th Cir. 2005) (citing to 18 U.S.C. § 3742(f)(1) as the basis for this discretion); 18 U.S.C. § 3742(f)(1) (providing that if this court determines a "sentence was imposed in violation of law . . . , the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate"); *United States v. Anthony*, 25 F.4th 792, 796 (10th Cir. 2022) ("We conclude that restitution is a

component of a criminal sentence . . . . Our conclusion is based on the restitution statutes and Supreme Court precedent, both of which treat restitution as part of the defendant's sentence."). "It is appropriate to exercise such discretion" when the government bears the burden of proof, the "[d]efendant alerted the government to the deficiency in its evidence, and the government did not seek to cure the deficiency." *Montano*, 109 F.4th at 1286 n.21 (quoting *Forsythe*, 437 F.3d at 963); *see also Forsythe*, 437 F.3d at 963-64.

Cifuentes-Lopez petitioned to enter a guilty plea in this case in March 2020. In August of that same year, after this court had already issued *Anthony I*, the government filed its original request for awards of restitution to D.H. and S.H. Relying specifically on *Anthony I*, Cifuentes-Lopez asserted the government's request was not based on losses to the victims he directly caused but, instead, on undistinguished harms imposed on the victims by all of their many abusers. Thereafter, this case was abated pending our resolution of *Anthony II*. *Anthony II* reiterated that the government cannot satisfy its burden of demonstrating but-for causation by introducing evidence a victim suffered losses flowing from an undifferentiated group of individual child sex abusers. 22 F.4th at 950-52. Nevertheless, as recounted above, the government's amended request for awards of restitution continued to rely on Missar's reports, which did not differentiate between the losses S.H. and D.H. suffered at the hands of all abusers as a whole and the losses

15

directly caused by Cifuentes-Lopez's offenses.[8] And, again, in opposing the government's amended request, Cifuentes-Lopez clearly objected to the government's failure to provide evidence of losses to the victims that would not have occurred absent his specific crimes. Furthermore, during the restitution hearing, Cifuentes-Lopez specifically elicited from Wong her inability to link any of the victims' losses "to his direct actions." R. Vol. III. at 38. The government did not attempt to fill this evidentiary gap in the intervening period between the restitution hearing, held on October 21, 2022, and the issuance of the district court's restitution order on August 19, 2024. Under these circumstances, even fully taking account of the policies underlying the TVPRA, "[t]he government should not have [another] opportunity to make the record that it failed to make earlier." *United States v. Thomas*, 749 F.3d 1302, 1315-16 (10th Cir. 2014).

## IV. CONCLUSION

For those reasons set out above, the district court's orders of restitution are **REVERSED**. The matter is **REMANDED** to the district court for the sole purpose of vacating that portion of the judgment mandating restitution.

Entered for the Court

Michael R. Murphy
Circuit Judge

---

[8] It is true the government supplemented Missar's reports with Wong's application of accounting techniques, but Wong made clear she could not "link" the requested restitution amount to Cifuentes-Lopez's "direct actions." R. Vol. III at 38.

16